OPINION

TROY WAYNE POTEETE, Justice.

CONCURRING IN PART:

I CONCUR WITH THE MAJORITY IN THE DETERMINATION to deny the Motion to Dismiss filed by the Cherokee Nation and the Tribal Council.
I CONCUR that the Appellants should have been allowed the status of interve-nors and not amicus and that the district Court erred when it reversed itself and relegated the Appellants to amicus status.
I do not agree with the majority’s determination that relegating of the Appellants to amicus status did them no harm. In Watts v. Smith, 10 Am. Tribal Law 297, 299, Paragraph 2 this court stated:
“Deviations from reasonably equal division of citizenship among the 5 districts created should be well documented in the record and must exist in the form of testimony taken, under oath, and subject to cross examination.” Emphasis added.
Amicus status deprived the Appellants of the right to cross examination of witnesses in the proceedings below.

DISSENTING IN PART:

I respectfully dissent to the Majority Determination that there is no sufficient basis to interfere with the action of the Tribal Council and the determination that district boundary lines as established by Legislative Act 26-12 (LA-26-12) are constitutional.
I agree with the Majority that this court must “give great deference to the enactments of the Tribal Council and where possible uphold their constitutionality.” Watts v. Smith, 10 Am. Tribal Law at 299; see also Lay v. Cherokee Nation, JAT-95-05-K, at 8-9. However, I do not believe that the deference required allows this Court to forgo scrutiny of the legislative act to ascertain that an acceptable rationale exists for deviation from the acceptable norm of a 10% deviation between the largest and smallest districts.
In Watts v. Smith, 10 Am. Tribal Law at 299, this court set out the framework to determine constitutionality of reapportionment with this statement:
“This court recognizes the need to give great deference to the enactments of the Tribal Council and where possible uphold their constitutionality. Notwithstanding, any enactment of the Council is subject to review to insure that the same is not contrary to the Constitution. The ultimate issue is whether there is a constitutionally justifiable basis to deviate from ‘one Cherokee, one vote’. . There has been much argued about the 10% rule. This ride is not codified in Cherokee law. Nevertheless, it is a rule of persuasive guidance established by the U.S. Sup.Ct., Voinovich v. Quilter, 507 U.S. 146 [113 S.Ct. 1149, 122 L.Ed.2d 500]-Supreme Court 1993. Granted, it is not mandatory even in federal districting, nonetheless, it does afford a reasonable benchmark, any substantial deviation from which *327 should be justified, As such, there must be a compelling governmental interest to over-ride an otherwise unconstitutional deviation."
In Watts the court reviewed the district lines drawn by Legislative Act 20-10 which created a 35.77% deviation between the highest and lowest population districts. (District 5 plus 22.88% and District 4 minus 12.89%). This Court determined that this deviation exceeded what was constitutionally acceptable and held the act unconstitutional.
The majority opinion herein erroneously states: “The error was remedied by this Court along county lines to bring the five (5) districts closer to the deviation standard". Such was not the case. This Court did not remedy the error, but rather simply stated that the alternative boundary proposed by the Appellant would be acceptable. It is important to clarify that this Court did not assume or usurp the Legislative prerogative to apportion itself in accordance with the Constitutional mandate. Subsequent to this Courts announcement of its opinion the Tribal Council adopted LEGISLATIVE ACT-36-10 (LA-36-10) which provided a total deviation of 19.28%, with boundary lines drawn along county lines, which have traditionally guided Tribal Council districting.
The Appellants complain that LA 26-12 has created a deviation of 19.06% which is a slight improvement over the disparity approved of by this court in Watts.[1] The configuration of the fifteen districts created by the LA 26-12 lack all those attributes which made such a variance in population among the districts acceptable. The configuration of the five districts set out in LA-36-10 were drawn along county lines and the exterior boundaries of the Cherokee Nation and provided a clear delineation of district boundaries. Those five districts are compact, contiguous, and do not split communities. Retention of these attributes is an acceptable justification for deviation from the 10% rule. Mahan v. Howell, 410 U.S. 316, 328, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973), Brown v. Thomson, 462 U.S. 835, 842-843, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983). A long line of cases has established ‘traditional districting principles’ which guide determination of acceptable levels of deviation from the equal distribution of the population, these include compact shape, contiguous, respect for political subdivisions and traditional boundaries. Shaw v. Reno, 509 U.S. 630 at 647, 113 S.Ct. 2816, 125 L.Ed.2d 511, Miller v. Johnson, 515 U.S., 900, 919-20, 115 S.Ct. 2475, 132 L.Ed.2d 762(1995) Bush v. Vera, 517 U.S. 952, 977, 116 S.Ct. 1941, 135 L.Ed.2d 248 (1996).
By contrast the districts created by LA-26-12 are not contiguous, split at least ten towns and communities, split counties, and are without definition but for the lines on a map. While district boundaries along county lines can be readily determined by reference to a simple map as was the situation in LA-36-10, such is not the case with LA-26-12. The irregular lines which split towns, communities, and traditional political sub-division boundaries are based on some landmarks and a variety of boundaries, including zip code, but these boundaries are not identified in the act. I agree with the District Court that it is the duty of the Council and not the Court to determine the exact District boundaries. However, without some legal definition the exact District boundaries will be left to Geo-Data Department or some other Depart *328 ment of the Executive Branch, The Constitution clearly requires the Council to determine District Boundaries. As it is written LA 26-12 leaves determination of District Boundaries to the Executive Branch. The vagueness of the District descriptions also leaves Cherokee citizens without a clear reference with which to determine their voting district and will undoubtedly be the source of much controversy and confusion.
The deviation of 19.28% in LA-36-10 could be justified because the districts created thereby were contiguous, compact, and honored traditional political sub divisions and Cherokee Communities. In stark contrast, Legislative Act-12-26 violates the “one Cherokee one vote” standard, while at the same time dividing communities and creating disjointed, disconnected, and incoherent districts. The lack of proper descriptions of these districts leaves many Cherokee voters without an authoritative reference to determine within which district they should be registered to vote.
I appreciate that a division into fifteen districts makes following county lines impractical. However, the configurations of the districts in LA-12-26 offer no coherent adherence to any traditional tribal, state or local political subdivisions such as are necessary to justify substantial deviation from the “one Cherokee, one vote” standard which this Court has heretofore adhered.
It should be noted that the necessity of 15 districts is an imposition imposed by the Tribal Council upon itself by Legislative Act 36-10, section 5(D).
Art. 6, § 3 of the Constitution of the Cherokee Nation simply states;
“The Council shall establish representative districts which shall be within the boundaries of the Cherokee Nation. Fifteen of these seats shall be apportioned to afford a reasonably equal division of citizenship among the districts, .....
LA 12-26 fails to create a reasonably equal division of citizenship among the fifteen districts it creates. It creates districts with a variance of 19.06%, almost twice the acceptable variance of 10%; and does so while violating that almost universally accepted principle of democratic governments; the principle that political subdivisions should be contiguous.
The act also creates an absurd situation by creating a district in which no elected council person lives and then assigning an elected representative to represent a district in which she does not live. The Cherokee Nation Constitution Article VI, Section 3 requires that “Council members representing districts within the boundaries must be domiciled within their district ”, LA-26-12 purports to remedy the Constitutional dilemma by assigning a Councilor to the district. Certainly such a remedy is less objectionable than the even more absurd result of declaring that a Councilor, duly elected by the voters, has been rendered ineligible by legislative fiat.

SUMMARY

I believe that LA-26-10 is unconstitutional because;
It fails to adequately describe the Districts it purports to create and that it leaves the determination of District Boundaries to the Executive Branch.
It violates the “one Cherokee, one vote” standard without acceptable justification.
The creation of a district without a representative and the purported assignment of a representative to that district cannot be reconciled to the Constitution.
RESPECTFULLY.

. Legislative Act 36-10 (LA-36-10) established a deviation of minus 10.03% and plus 9.25% while Legislative Act 26-12 (LA-26-12) established a deviation of minus 9.12% plus 9.94%.